J-S27024-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMIL SMITH | |
| Appellant | No. 1449 EDA 2014 |

Appeal from the Judgment of Sentence Entered April 3, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0010074-2011

BEFORE:  FORD ELLIOTT, P.J.E., STABILE, and FITZGERALD,[*] JJ.

MEMORANDUM BY STABILE, J.:                        **FILED JULY 20, 2015**

Appellant, Jamil Smith, appeals from the April 3, 2014 judgment of sentence imposing an aggregate seven to fourteen years of incarceration followed by five years of probation for possession with intent to deliver a controlled substance ("PWID"), unlawful possession of a firearm, and possession of an instrument of crime.[1]  We affirm.

The transcript for Appellant's pre-trial motion to suppress[2] reveals that, on February 26, 2011 at 2:45 a.m., Officers Timothy Straus ("Officer

_____

[*] Former Justice specially assigned to the Superior Court.

[1]  35 P.S. § 780-113(a)(30), 18 Pa.C.S.A. §§ 6105 and 907, respectively.

[2]  The first of Appellant's three assertions of error is that the trial court wrongly denied his motion to suppress evidence.  In analyzing that
*(Footnote Continued Next Page)*

Straus") and his partner were on patrol in the 35[th] police district of Philadelphia when they received a report of three armed males breaking into a home. N.T. Hearing, 7/18/12, at 14-15. The armed men entered the home from an alleyway north of Spencer Street. *Id.* The officers arrived at the location in less than one minute and observed two men jumping over a fence from the backyard of a home located at 253 West Spencer Street. *Id.* at 16, 31. The officers stopped these two men and did a pat down search for safety. *Id.* The pat-down search revealed rolls of duct tape and packing tape. *Id.* One suspect had a single glove on him. *Id.* The matching glove and a second pair of gloves were in the back yard. *Id.* Officer Straus observed a shotgun and handgun laying on a mattress in the backyard the two detainees just departed. *Id.* The home had a broken window and broken glass and a screwdriver were visible on the mattress next to the guns. *Id.* at 16-17. The officers knocked on the back door and received no answer, then entered the home to search for potential victims and/or the third armed male referenced in the report. *Id.* at 18, 25. They entered through the broken window because they could not get in through the door. *Id.* at 18, 43.

A black female came downstairs and met the officers. *Id.* They briefly detained her and then proceeded upstairs to secure bedrooms. *Id.* In one

*(Footnote Continued)* ─────────────

argument, we confine our review to the transcript of the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1082-85 (Pa. 2014).

of the upstairs bedrooms the officers found Appellant in bed with a black female. *Id.* at 18-19. Also on the bed was a dinner plate with apparent narcotics and packaging material on it. *Id.* at 19. When asked, Appellant acknowledged that two guns were underneath the mattress. *Id.* at 21. The officers took Appellant into custody and secured the house as a crime scene and obtained a search warrant. *Id.* at 22, 31.

Officer Anthony Parrotti ("Officer Parrotti") executed the search warrant. *Id.* at 31. During the search, Officer Parrotti discovered suspected marijuana, crack cocaine, Xanax, Percocet and methadone in the dining room. *Id.* at 32. In the second floor bedroom, where police apprehended Appellant, Officer Parrotti discovered more suspected marijuana and crack cocaine and paraphernalia, including a digital scale and drug packaging materials. *Id.* at 33. Officer Parrotti also recovered two revolvers from underneath the bed, a .38 caliber and a .32 caliber, each with five live rounds. *Id.* at 33-34. The second floor bedroom also had a small refrigerator in which Officer Parrotti found suspected PCP. *Id.* at 34. Officer Parrotti found more than $1,200.00 in cash on a dresser. *Id.* Field tests confirmed the presence of marijuana and cocaine base, and Officer Parrotti submitted the pills for laboratory sampling. *Id.*

Yasmine Strong ("Strong"), the female who met police at the bottom of the steps, testified for the defense. She stated police knocked at the house's front gate, which she did not have a key to unlock. *Id.* at 58.

Police asked her to squeeze through a space in the gate and then handcuffed her before they entered the home by breaking the front door. *Id.* at 59. When she returned to the home the next day, she did not observe any of the bedroom doors to be broken. *Id.* at 60.

Appellant argues the police had no probable cause and exigent circumstances to support the initial warrantless entry into the home. He argues the trial court erred in denying his motion to suppress the evidence garnered during the initial entry of the home and during the execution of the search warrant. We conduct our review as follows:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Com. v. McAdoo*, 46 A.3d 781, 783-84 (Pa. Super. 2012), *appeal denied*, 65 A.3d 413 (Pa. 2013).

The Fourth Amendment to the United States Constitution and Article 1, § 8 of the Pennsylvania Constitution protect citizens against unreasonable

searches and seizures. Both constitutions forbid police to enter a private home without a warrant absent probable cause and an exception to the warrant requirement, such as consent or exigent circumstances. **Commonwealth v. Johnson**, 68 A.3d 930, 935 (Pa. Super. 2013). Probable cause exists where "the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." **Commonwealth. v. Thompson**, 985 A.2d 928, 931 (Pa. 2009). We need not discern whether the officer's belief was more likely correct than incorrect. **Id.** A probability of criminal activity, rather than a *prima facie* showing thereof, is sufficient. **Id.** To answer the question, we examine the totality of the circumstances. **Id.**

Here, police received a radio report of a possible armed robbery. We can assess the reliability of information known to the police in various ways, including the extent to which police are able verify it. **Commonwealth v. Santiago**, 736 A.2d 624, 630 (Pa. Super. 1999), *appeal denied*, 736 A.2d 624 (Pa. 2000). Officer Straus and his partner responded to the scene in less than one minute. Officer Straus observed two men leap over a fence from a yard into an alley. Firearms were visible on a mattress in the yard, as was broken glass, a broken window and a screwdriver. Thus, the record

indicates police responded quickly to the report and upon arrival at the scene observed circumstances consistent with the report.

The trial court found that the screwdriver, the tape and the gloves were consistent with burglary tools. Trial Court Opinion, 8/26/14, at 4. The trial court also relied on the quick response time, the presence of firearms in the backyard, and the broken window to conclude that probable cause existed. *Id.* Appellant's argument to the contrary is that the police gathered no evidence to support their theory that a third individual was inside the home. Appellant also argues that the police made insufficient efforts to make contact with someone inside the home before they entered.

Given the totality of the circumstances, we find no error in the trial court's legal conclusion. Police arrived at the scene of an alleged armed home invasion less than sixty seconds after receiving the report, and observed circumstances consistent with the report. The absence of a third armed suspect upon the arrival of the police does not support a contrary conclusion. Rather, police could reasonably believe the third suspect remained inside the home or that victims inside the home were in need of assistance. Considering the totality of the circumstances, the record of the suppression hearing supports at least a reasonable probability that criminal activity was afoot inside the home.

Next, we examine the trial court's finding that exigent circumstances existed.

> [V]arious factors need to be taken into account to assess the presence of exigent circumstances; for example: (1) the gravity of the offense; (2) whether the suspect is reasonably believed to be armed; (3) whether there is a clear showing of probable cause; (4) whether there is a strong reason to believe that the suspect is within the premises being entered; (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended; (6) whether the entry is peaceable; (7) the timing of the entry; (8) whether there is hot pursuit of a fleeing felon; (9) whether there is a likelihood that evidence will be destroyed if police take the time to obtain a warrant; and (10) whether there is a danger to police or other persons inside or outside of the dwelling to require immediate and swift action.

*Johnson*, 68 A.3d at 937 (quoting ***Commonwealth v. Dean***, 940 A.2d 514, 522 (Pa. Super. 2008)). In analyzing exigent circumstances, courts must balance the needs of law enforcement against the rights and liberties of private citizens. *Id.* "The burden is on the Commonwealth to 'present clear and convincing evidence that the circumstances surrounding the opportunity to search were truly exigent ... and that the exigency was in no way attributable to the decision by the police to forego seeking a warrant.'" ***Com. v. Bostick***, 958 A.2d 543, 556-57 (Pa. Super. 2008) (quoting ***Commonwealth v. English***, 839 A.2d 1136, 1141 (Pa. Super. 2003)), *appeal denied*, 987 A.2d 158 (Pa. 2009). "Moreover, '[a]ll decisions made pursuant to the exigent circumstances exception must be made cautiously, for it is an exception which by its nature can very easily swallow the rule unless applied in only restricted circumstances.'" ***Id.***

We consider the ten factors described in ***Johnson*** in order. First, police acted on a report of three armed men burglarizing a home. Appellant

does not deny that armed intrusion into a private home is a grave offense. Second, police apprehended two of three suspects and observed two firearms in the backyard upon their prompt arrival at the scene. Police could reasonably believe that the third suspect remained armed. Regarding the third factor, we have already explained that police had probable cause to believe a crime was committed in the home. Fourth, police arrived at the home within a minute of the report and found two of the three suspects described in the report. Given the prompt response time, police could reasonably believe that the third suspect was still present and potentially inside the home. Fifth, two of the three suspects were leaving the premises upon the arrival of police. Police therefore had reason to believe that the reported third suspect would escape if they did not promptly apprehend him. Sixth, Officer Straus testified that he knocked and announced his presence, received no answer, and then entered the home through the broken window with another officer. The trial court did not credit Strong's testimony regarding the forced entry through the front door.

The seventh factor—timing—refers to the time of day of the search. *Commonwealth v. Waddell*, 61 A.3d 198, 211 (Pa. Super. 2012). Nighttime searches are "particularly suspect." *Commonwealth v. Roland*, 637 A.2d 269, 271 (Pa. 1994). Here police entered the home in the early morning hours of February 26, 2011. The timing, however, was dictated by a report of a robbery or burglary in progress. Eighth, the record does not

reflect hot pursuit of a fleeing felon. Nonetheless, the facts known to police created a strong possibility that a third suspect was present and could escape if not quickly apprehended. Ninth, nothing in the record indicates the police entered the home to prevent destruction of evidence. Tenth, an invasion of a private home by three armed intruders created a danger to any occupants of the home. Immediate entry gave the police the opportunity to apprehend a third armed suspect and render assistance to any victims.

In **Commonwealth v. Griffin**, 785 A.2d 501, 505-06 (Pa. Super. 2001), this Court held that police lawfully entered a home where they had probable cause to believe felonious drug activity was occurring inside and they observed an armed suspect retreat into the home. The potential for destruction of evidence combined with the danger presented by an armed suspect under cover of nightfall justified immediate entry rather than securing the home pending a warrant. **Id.** at 506.

We believe the same result obtains here. Based on information known to them at the time of warrantless entry, the police reasonably believed they were at the scene of an armed home invasion possibly still in progress. Apprehension of a third armed suspect would protect the police and any lawful occupants of the home. In other words, the entry of the home was an effort to protect rather than intrude upon the rights of lawful occupants. We therefore believe the balance between the interests of law enforcement and the rights of private citizens tips in favor of law enforcement in this case.

The trial court did not err in finding that exigent circumstances justified warrantless entry into the home. Appellant's first argument lacks merit.

In his remaining arguments, Appellant challenges the sufficiency and weight of the evidence in support of each of his convictions. We must therefore review the record to determine:

> [W]hether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the factfinder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. Additionally, when examining sufficiency issues, we bear in mind that: the Commonwealth's burden may be sustained by means of wholly circumstantial evidence; the entire trial record is evaluated and all evidence received against the defendant considered; and the trier of fact is free to believe all, part, or none of the evidence when evaluating witness credibility.

***Commonwealth v. Crabill***, 926 A.2d 488, 490-91 (Pa. Super. 2007).

Appellant argues the record lacks sufficient evidence of his possession of the drugs and firearms present in the bedroom where police apprehended him. Appellant acknowledges that he was a resident of the home (mail recovered during execution of the search warrant confirmed this fact), but he argues the evidence is not sufficient to prove the contraband belonged to him rather than one of the two females present at the time of his arrest. Appellant's Brief at 21. In other words, Appellant argues the Commonwealth failed to prove beyond a reasonable doubt his constructive possession of the drugs and firearms.

Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Commonwealth v. Hopkins*, 67 A.3d 817, 820, (Pa. Super. 2013), *appeal denied*, 78 A.3d 1090 (2013). The factfinder can find the defendant in constructive possession of contraband in a home where the defendant has equal access and the items are in plain view. *Commonwealth v. Mudrick*, 507 A.2d 1212, 1214 (Pa. 1986). A defendant's residence in and receipt of mail at a home support a conclusion that he is in constructive possession of contraband found therein. *Commonwealth v. Harvard*, 64 A.3d 690, 699-700 (Pa. Super. 2013), *appeal denied*, 77 A.3d 636 (Pa. 2013); *Commonwealth v. Guitierez*, 969 A.2d 584, 590-91 (Pa. Super. 2009), *appeal denied*, 983 A.2d 726 (Pa. 2009).

In *Commonwealth v. Santiesteban*, 552 A.2d 1072, 1075 (Pa. Super. 1988), the defendant was in bed with a female when police apprehended him. Police found large amounts of cash in the bedroom and other contraband on the first floor of the house. Citing *Mudrick*, this Court found sufficient evidence of the defendant's constructive possession of the contraband.

The facts produced at trial were, in pertinent part, the same as those produced during the suppression hearing. That is, police apprehended Appellant in a bedroom where they also found substantial quantities of drugs, drug paraphernalia, cash and two firearms. Two females were present in the home with Appellant, including Strong, who claimed to live there, and the woman in bed with Appellant. Since Appellant resided in the home, received mail there, and had equal access to contraband found in plain view and in his bedroom, we conclude the record contains sufficient evidence of his constructive possession of the controlled substances and firearms that formed the basis for all three of his conviction. Appellant's argument to the contrary, which fails to cite any portion of the record in violation of Pa.R.A.P. 2119(c), states in conclusory fashion that the illicit items could have belonged to one of the two females present. That argument does not merit relief.

Finally, Appellant argues the jury's verdict is contrary to the weight of the evidence.

> The weight given to trial evidence is a choice for the factfinder. If the factfinder returns a guilty verdict, and if a criminal defendant then files a motion for a new trial on the basis that the verdict was against the weight of the evidence, a trial court is not to grant relief unless the verdict is so contrary to the evidence as to shock one's sense of justice.
>
> When a trial court denies a weight-of-the-evidence motion, and when an appellant then appeals that ruling to this Court, our review is limited. It is important to understand we do not reach the underlying question of whether the verdict was, in fact, against the weight of the evidence. We do not decide how we

would have ruled on the motion and then simply replace our own judgment for that of the trial court. Instead, this Court determines whether the trial court abused its discretion in reaching whatever decision it made on the motion, whether or not that decision is the one we might have made in the first instance.

***Commonwealth v. West***, 937 A.2d 516, 521 (2007), *appeal denied*, 947 A.2d 737 (Pa. 2008).

The entirety of Appellant's argument—other than his recitation of the standard of review—is that the jury's verdict was incorrect because two other people were in the house when police apprehended Appellant. Appellant's Brief at 23-24. As we discussed in connection with Appellant's sufficiency of the evidence argument, equal access to items in plain view can establish constructive possession. We discern nothing shocking about the jury's verdict. The trial court did not abuse its discretion in declining to award a new trial based on Appellant's weight of the evidence challenge. Appellant's argument fails.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/20/2015

- 13 -